FILED

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2015 FEB 13 A 9:06

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

JUDITH TEFFERA,

        Plaintiff,

v.

OCWEN LOAN SERVICING, LLC,

Civil Case No. 1:15cv201
JCC/IDD

Serve:  Corporation Service Company, Reg. Agent
Bank of America Center, 16th Floor
1111 East Main Street
Richmond, VA 23219

and

EQUIFAX INFORMATION SERVICES, LLC,

Serve:  Corporation Service Company, Reg. Agent
Bank of America Center, 16th Floor
1111 East Main Street
Richmond, VA 23219

and

TRANS UNION, LLC,

Serve:  Corporation Service Company, Reg. Agent
Bank of America Center, 16th Floor
1111 East Main Street
Richmond, VA 23219

and

EXPERIAN INFORMATION SOLUTIONS, INC.,

Serve:  David N. Anthony, Reg. Agent
1001 Haxall Point
Richmond, VA 23219

        Defendants.

## COMPLAINT

The Plaintiff, JUDITH TEFFERA, (hereinafter, "Plaintiff"), by counsel, and for her Complaint against Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought against all the Defendants pursuant to 15 U.S.C. § 1681 *et seq*. (Federal Fair Credit Reporting Act or "FCRA").

### JURISDICTION

2. The jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. § 1681(p) and 28 U.S.C. §1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

### PARTIES

4. The Plaintiff, JUDITH TEFFERA ("Plaintiff"), is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

5. Upon information and belief, Ocwen Loan Servicing, LLC ("Ocwen") is a foreign limited liability company doing business in Virginia as a mortgage servicer. At all relevant times hereto, Ocwen was a furnisher as governed by the FCRA.

6. Upon information and belief, EQUIFAX INFORMATION SERVICES, LLC ("Equifax") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

7. Upon information and belief, Equifax is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f). Upon information and belief, Equifax is regularly engaged in the business

2

of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

8. Upon information and belief, Equifax disburses such consumer reports to third parties under contract for monetary compensation.

9. Upon information and belief, TRANS UNION, LLC ("Trans Union") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

10. Upon information and belief, Trans Union is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

11. Upon information and belief, Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

12. Defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

13. Upon information and belief, Experian is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

14. Upon information and belief, Experian disburses such consumer reports to third parties under contract for monetary compensation.

## FACTS

15. In October 2014, Plaintiff obtained a copy of her credit report and learned that the credit reporting agencies were inaccurately reporting several accounts in her credit file, including her mortgage loan with Ocwen.

16. In particular, Plaintiff's mortgage loan with Ocwen was inaccurately reporting that Plaintiff was more than $40,000.00 past due on her mortgage.

17. In addition, Equifax was reporting Plaintiff as $19,359 past due on her mortgage with OneWest Bank—an account that was closed and transferred to Ocwen.

18. This reporting was inaccurate. Plaintiff had filed a Chapter 13 bankruptcy and had made all of her mortgage payments to her servicer, OneWest Bank, as part of her wage earner plan.

19. Thus, at the conclusion of her bankruptcy in June 2013, Plaintiff was current on her mortgage and she continued making monthly mortgage payments to OneWest Bank from July 2013 through October 2013.

20. OneWest Bank then transferred Plaintiff's mortgage to Ocwen, who started rejecting Plaintiff's mortgage payments on the grounds that Plaintiff's monthly payments were insufficient to satisfy the defaulted amount on her loan.

21. However, Plaintiff was not in default on her loan—the amounts purportedly causing Plaintiff's "default" were sham charges and fees claimed by OneWest in Plaintiff's bankruptcy, which were rejected by the bankruptcy court.

22. Plaintiff never owed these amounts to OneWest or, in turn, to Ocwen who tried to assert these sham charges assessed by OneWest even though the bankruptcy court rejected the

4

validity of the charges and OneWest subsequently accepted Plaintiff's monthly mortgage payments from July 2013 through October 2013.

23. On or around October 1, 2014, Plaintiff sent a separate credit dispute letter to Equifax, Experian, and Trans Union, explaining that the credit bureaus were inaccurately reporting her Ocwen mortgage loan. In this letter, Plaintiff explained that she filed for a Chapter 13 bankruptcy and completed her wage earner plan, including curing any arrearages on her mortgage loan. Plaintiff further explained that she was not past due on her loan and continued to make her monthly mortgage payments.

24. To verify the accuracy of her statements, Plaintiff enclosed several documents with her dispute letters, including: (1) the Chapter 13 Standing Trustee's Final Report and Account showing that Plaintiff was current on her obligation with OneWest; (2) cancelled checks for post-bankruptcy payments made to OneWest from July 2013 through October 2013; and (3) letters from Ocwen rejecting Plaintiff's monthly mortgage payments from November 2013 through June 2014.

25. Plaintiff further disputed the credit reporting agencies' reportings of several other accounts (Verizon, OneWest, Homeward Residential, and a different Ocwen account) in her credit file, which reflected the current status of the account as "included in bankruptcy."

26. This reporting was inaccurate and/or incomplete because the accounts were no longer "included in bankruptcy," and, in fact, had been paid in full. Accordingly, the credit reporting agencies' reportings of these accounts made it appear as if the account was still included in a pending bankruptcy and that Plaintiff had not made any payments on these accounts for many years.

27. Equifax provided its Investigation Results on or around October 13, 2014. Equifax's Investigation Results indicated that it had updated the Plaintiff's Ocwen account. However, to Plaintiff's dismay, Equifax was now inaccurately reporting that Plaintiff was $43,852 past due on her mortgage. Moreover, Equifax was also reporting that Plaintiff was currently $19,359 past due on her mortgage with OneWest—the same account that was closed and transferred to Ocwen. Moreover, Equifax failed to correct its reporting of Plaintiff's accounts with Verizon, Homeward Residential and another account with Ocwen. The current status of these accounts still reported as "included in bankruptcy."

28. Similarly, Experian provided its Investigation Results on or around October 30, 2014, which indicated that Plaintiff was $43,852 past due on her mortgage. Additionally, the Ocwen tradeline reported by Experian also indicated that Plaintiff filed for bankruptcy on October 24, 2013, which was untrue and inconsistent with Experian's public record reporting of the bankruptcy. This created the appearance that Plaintiff filed for multiple bankruptcies. Moreover, Experian failed to update its reporting of Plaintiff's accounts with Verizon, OneWest, Homeward Residential and Plaintiff's other account with Ocwen—furthering adding to the appearance that Plaintiff was currently in a pending bankruptcy.

29. Similarly, Trans Union provided its Investigation Results on or around October 30, 2014. Trans Union was now inaccurately reporting that Plaintiff was $43,852 past due on her mortgage. Moreover, Trans Union failed to update its reporting of Plaintiff's accounts with Verizon, OneWest, Homeward Residential and Plaintiff's other account with Ocwen.

30. Upon information and belief, based on the way each credit reporting agency responded to Plaintiff's dispute letter, Plaintiff alleges that Experian, Equifax and Trans Union did not contact Verizon, Homeward Residential or OneWest regarding Plaintiff's dispute.

31. On or about December 8, 2014, Plaintiff forwarded a follow-up dispute letter to credit bureaus, indicating that they had failed to correct the inaccurate information in her credit reports. Once again, Plaintiff explained that she filed for a Chapter 13 bankruptcy and completed her wage earner plan, including curing any arrearages on her loan. Plaintiff also explained that she was not past due on her loan and continued to make her monthly mortgage payments, but Ocwen was claiming that she owed the sham charges rejected by the bankruptcy court.

32. With her follow-up letter, Plaintiff enclosed her prior dispute letter and the documents enclosed.

33. On or around December 16, 2014, Equifax provided the results of its investigation to the Plaintiff. To her dismay, Equifax's Investigation Results indicated that it verified the Ocwen account was reporting correctly. Moreover, Equifax failed to completely correct its reporting of Plaintiff's accounts with Verizon, Homeward Residential and the other account with Ocwen. The current status of these accounts still reported as "included in bankruptcy."

34. Likewise, Experian provided its Investigation Results on or around December 19, 2014. Once against, Experian's Investigation Results indicated that it verified that Plaintiff was $42,852 past due on her mortgage with Ocwen. Moreover, Experian failed to update its reporting of Plaintiff's accounts with Verizon, OneWest, Homeward Residential and Plaintiff's other account with Ocwen.

35. Plaintiff did not receive investigation results from Trans Union. However, upon information and belief, Trans Union received Plaintiff's follow-up dispute letter and failed to update its reporting of the disputed accounts.

36. The Ocwen reporting was inaccurate. This reporting was inaccurate. Plaintiff had filed a Chapter 13 bankruptcy and had made all of her mortgage payments to OneWest as part of her wage earner plan. Thus, at the conclusion of her bankruptcy in June 2013, Plaintiff was current on her mortgage and she continued making monthly mortgage payments to OneWest until the loan was transferred to Ocwen, who began rejecting her payments.

37. Equifax, Experian, and Trans Union have knowledge that bankruptcies often result inaccurate credit reporting because of the lack of systems, procedures, and protocols to ensure accurate credit reporting after the bankruptcy is completed.

38. Defendants each received, but ignored the Plaintiff's disputes and refused to delete the inaccurate information in Plaintiff's credit reports.

39. Defendants each had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the information.

40. Upon information and belief, on numerous occasions, Equifax, Experian and Trans Union furnished the Plaintiff's consumer reports to multiple entities which contained the inaccurate derogatory information regarding the Ocwen account and the other accounts disputed by Plaintiff.

**COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
***(EQUIFAX, EXPERIAN, TRANS UNION)***

41. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

42. Equifax, Experian and Trans Union violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report and credit files it published and maintained.

43. As a result of Equifax, Experian and Trans Union's violations of 15 U.S.C. §1681e(b), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental, physical and emotional distress.

44. The violations by Equifax, Experian and Trans Union were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian and Trans Union were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

45. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i(a)(1)**
**(*EQUIFAX, EXPERIAN, TRANS UNION*)**

46. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

47. Equifax, Experian and Trans Union violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed

9

information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file.

48. Equifax, Experian and Trans Union's violations of 15 U.S.C. §1681i(a)(1), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

49. The violations by Equifax, Experian and Trans Union were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian and Trans Union was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

50. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(2)(A)
### *(EQUIFAX, EXPERIAN AND TRANS UNION)*

51. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

52. Equifax, Experian and Trans Union violated 15 U.S.C. §1681i(a)(2)(A) on multiple occasions by failing to provide Ocwen, Verizon, Homeward Residential and OneWest with all the relevant information regarding Plaintiff's disputes.

53. As a result of Equifax, Experian and Trans Union violations of 15 U.S.C. §1681i(a)(2), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental, physical and emotional distress.

54. The violations by Equifax, Experian and Trans Union were willful, rendering of the Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian and Trans Union was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

55. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(4)
### (EQUIFAX, EXPERIAN AND TRANS UNION)

56. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

57. Equifax, Experian and Trans Union violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by Plaintiff.

58. As a result of Equifax, Experian and Trans Union's violations of 15 U.S.C. §1681i(a)(4), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

59. The violations by Equifax, Experian and Trans Union were willful, rendering the Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian and Trans Union was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

60. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(5)(A)
### *(EQUIFAX, EXPERIAN AND TRANS UNION)*

61. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

62. Equifax, Experian and Trans Union violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit files or modify the item of information upon a lawful reinvestigation.

63. As a result of Equifax, Experian and Trans Union violations of 15 U.S.C. §1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

64. The violations by Equifax, Experian and Trans Union were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian and Trans Union were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

65. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT SIX: VIOLATION OF THE FAIR CREDIT REPORTING ACT
### Violation of 15 U.S.C. §1681s-2(b)(1)(A)
### (OCWEN)

66. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

67. On one or more occasions within the past two years, by example only and without limitation, Ocwen violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

68. When the Plaintiff mailed her disputes to the consumer reporting agencies ("CRAs"), they use a dispute system named, "e-Oscar", which has been adopted by the credit reporting agencies and by their furnisher-customers such as Ocwen. It is an automated system and the procedures used by the CRAs are systemic and uniform.

69. When Trans Union, Experian, or Equifax receive a consumer dispute, it (usually via an outsourced vendor) translates that dispute into an "ACDV" form.

70. Upon information and belief, the ACDV form is the method by which Ocwen has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

71. On information and belief, the Plaintiff alleges that to date Ocwen has never complained to the CRAs about the amount of information it receives regarding a consumer dispute through the e-Oscar system or through ACDVs.

72. If Ocwen receives a consumer dispute ACDV form, it is aware that it may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

73. Based on the manner in which Trans Union, Experian, and Equifax responded to the Plaintiff's disputes, representing that Ocwen had "verified" the supposed accuracy of its reporting, Plaintiff alleges the credit reporting agencies did in fact forward the Plaintiff's dispute via an ACDV to Ocwen.

74. Ocwen understood the nature of the Plaintiff's dispute when it received the ACDV from the credit bureaus.

75. When Ocwen received the ACDV from the credit reporting agencies, Ocwen as well could have reviewed their own system and previous communications with the Plaintiff and discovered additional substance of the Plaintiff's dispute.

76. Notwithstanding the above, Ocwen follows a standard and systemically unlawful process when they receive the ACDV dispute. Basically, all Ocwen does is review its own internal computer screen for the account and repeat back to the ACDV system the same information that they already had reported to the CRAs.

77. When Ocwen receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

78. As a result of Ocwen's violations of 15 U.S.C. §1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

79. The violations by Ocwen were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

80. The law in the Fourth Circuit and even nationally has long ago been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

81. Ocwen was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

82. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Ocwen intended its employees or agents to follow.

83. On information and belief, the Plaintiff alleges that Ocwen's employees or agents did not make a mistake (in the way in which he or she followed the Defendants' procedures) when he or she received, processed and responded to the CRAs' ACDVs.

84. On information and belief, the Plaintiff alleges that Ocwen has not materially changed their FCRA investigation procedures after learning of their failures in this case.

85. In the alternative, Ocwen was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

86. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Ocwen in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT SEVEN: VIOLATION OF THE FAIR CREDIT REPORTING ACT**
Violation of 15 U.S.C. §1681s-2(b)(1)(B)
(OCWEN)

87. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

88. On one or more occasions within the past two years, by example only and without limitation, Ocwen violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer report agencies.

15

89. As Plaintiff detailed in the previous Count, Ocwen has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

90. Ocwen is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

91. Ocwen does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

92. Ocwen understood the Plaintiff's disputes and that the accounts were not reporting her payment history accurately.

93. Nevertheless, it ignored such information and instead simply regurgitated the same information they had previously reported to the CRAs.

94. As a result of Ocwen's violations of 15 U.S.C. §1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

95. The violations by Ocwen were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Ocwen was negligent, which entitles Plaintiff to recover under 15 U.S.C. §1681o.

96. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Ocwen in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT EIGHT: VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**Violation of 15 U.S.C. §1681s-2(b)(1)(C) and (D)**
**(OCWEN)**

97. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

98. On one or more occasions within the past two years, by example only and without limitation, Ocwen violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the their representations within Plaintiff's credit files with Trans Union, Experian, and Equifax without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

99. Specifically, Ocwen failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the CRAs.

100. On information and belief, the Plaintiff alleges that Ocwen rarely, if ever, adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

101. Furthermore, Ocwen knew that the Plaintiff disputed the subject accounts through her dispute letters to Equifax, Experian, and Trans Union.

102. The Plaintiff's disputes were bona fide as Plaintiff had cured any arrearage in her wage earner plan and continued to make timely payments after the completion of her bankruptcy.

103. As a result of Ocwen's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

104. The violations by Ocwen were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

105. Ocwen was aware of the *Saunders v. B.B.&T* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

106. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Ocwen intended their employees or agents to follow.

107. On information and belief, the Plaintiff alleges that Ocwen's employee or agent did not make a mistake (in the way in which he or she followed its procedures) when he or she received, processed and responded to the CRAs' ACDVs and did not include the XB code in the CCC field.

108. On information and belief, the Plaintiff alleges that Ocwen has not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

109. The violations by Ocwen were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Ocwen was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

110. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Ocwen in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,
**JUDITH TEFFERA**

By _/s/ Andrew Guzzo_
        Counsel

Kristi Cahoon Kelly, VSB#72791
Andrew J. Guzzo, VSB #82170
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
Telephone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

*Counsel for Plaintiff*